139 So.2d 785 (1962)
Malvin G. DICKERSON, Plaintiff-Appellant,
v.
MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, Defendant-Appellee.
No. 9690.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1962.
Gordon B. Golsan, Jr., Mansfield, for appellant.
Mayer & Smith, Shreveport, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Plaintiff instituted an action in the district court for recovery of medical expenses incurred by him as the result of personal injuries he received while driving an ambulance owned by his employer. Suit was filed against the insurer of a private automobile owned by plaintiff, but containing a clause covering certain medical expenses incurred by him while operating other vehicles. The lower court rejected plaintiff's demand under an exclusion clause of his policy, and he has appealed.
The district judge has favored this Court with an excellent written opinion wherein he correctly set forth the facts and very ably disposed of the legal issues. We are in complete accord with his findings and are apprehensive that any effort on our part to improve on same would have contrary results. We, therefore, quote same in full and make it the judgment of this Court:
"This is a suit by Malvin G. Dickerson to recover medical payments on `a family *786 automobile policy' issued to him by defendant, the Millers Mutual Fire Insurance Company of Texas.
"This policy in addition to insuring the plaintiff against liability to others as the result of the negligent operation of his 1955 Plymouth automobile, agreed to pay, to or on behalf of plaintiff reasonable medical expenses up to the amount of $2,000.00 for bodily injuries, while occupying or through being struck by an automobile, subject to certain `exclusions', which set forth instances or situations in which the insurer will not pay medical expenses.
"As a cause of action the plaintiff alleges that on March 14, 1959, he was riding in a vehicle owned by T. J. Drewitt Funeral Home when he was injured in an accident; and as a result of such injuries he incurred medical expenses in excess of $2,000.00. He alleges that the above mentioned policy of insurance was in full force and effect and that because thereof the defendant is indebted to him in the amount of $2,000.00.
"The specific language of the policy which the plaintiff relies upon is found under PART IIEXPENSES FOR MEDICAL SERVICES which provides:
"`To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services: DIVISION 1. To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury', caused by accident, while occupying or through being struck by an automobile.'
"The defendant filed an answer wherein it admitted the issuance of said insurance policy and the occurrence of the accident sued upon. But the defendant denied liability because the policy contained certain `exclusion' clauses, and particularly the following:
"`EXCLUSIONS This policy does not apply under PART II to bodily injury: (a) * * * (b) sustained by the named insured or a relative (1) while occupying an automobile owned by or furnished for the regular use of either the named insured or any relative, other than an automobile defined herein as an `owned automobile.' * *'.
"The evidence conclusively shows that the plaintiff, at the time he sustained his injuries, was riding in an automobile which was furnished him by his employer. The question to be determined by the Court is whether or not the use made by this plaintiff of said vehicle was `Regular use', within the meaning of the policy.
"Counsel for plaintiff has pointed out that he has been unable to locate a decision by the Courts of the State of Louisiana which defines the words `regular use', in the context that it is presented to the Court in this case. Able counsel for plaintiff contends that the words `regular use' suggest `principal use', as distinguished from `occasional or incidental use'. Counsel argues that the evidence shows that the use made by plaintiff of the vehicle he was driving at the time of the accident was an `occasional use'; and that any attempt to make an `occasional use' come within the exclusion by contending that it means `regular use' creates an ambiguity which calls for an interpretation of the words by the named insured different from what would normally occur to his mind when he saw the words `REGULAR USE'.
"Counsel for plaintiff then correctly points out that any ambiguity in a contract must be construed against the party who prepared the contract. Article 1957, LSA-Civil Code provides:
"`In a doubtful case the agreement is interpreted against him who has contracted the obligation.'
"In support of his position counsel has cited Jones v. Standard Life & Accident Insurance Co. [La.App.], 115 So.2d 630, and Allbritton [Albritton] v. Firemans *787 Fund, 224 La. 522, 70 So.2d 111. In the Jones case, the Court cited Finley v. Massachusetts Mutual Life Insurance Co., 172 La. 477, 134 So. 399, 402, in which the Supreme Court said:
"`The settled jurisprudence is that the provisions of an insurance contract are to be strongly construed against the insurer.'
"Stripped of excess verbiage the exclusion provision is:
"`This policy does not apply under PART II to bodily injury * * *; (b) sustained by the named insured * * * while occupying an automobile owned by or furnished for the regular use of * * * the named insured * * other than an automobile defined herein as an `owned automobile', * * *'
"The effect of this exclusionary clause is that the insuring clause does not afford coverage to any automobile owned by the assured except the vehicle described in the policy. Coverage is not afforded the assured for a vehicle furnished for his `regular use'.
"The case of Leteff v. Maryland Casualty Company [La.App.], 91 So.2d 123 contains a detailed and extensive discussion of numerous cases which throw some light on the issues involved herein. The bulk of the decisions discussed in the Leteff case indicate that the purpose of the insurance companies in including the exclusion clauses, such as that relied upon by defendant herein, is to protect themselves from a situation where an insured could pay for one policy on one vehicle and be covered by the insurance in driving any car that he decided to use; that is any car under his control and that he might use at will and might use often.
"In Sumrall v. Aetna Casualty and Surety Company [La.App.], 124 So.2d 168, the Second Circuit Court of Appeal, in construing a similar exclusionary clause, said:
"`No uncertainty or ambiguity is disclosed in the language employed in the confection of this clause of the policy.'
"Taking into consideration the obvious purpose of the exclusionary clause, as above set forth, it is my opinion that there is no ambiguity or uncertainty in the language therein employed.
"The question is now narrowed to whether or not the evidence in this case discloses that the vehicle which plaintiff was driving was for his `regular use', within the meaning and intendment of the policy sued upon. This is a question of fact.
"The plaintiff at the time of the accident was employed by Mrs. T. J. Drewitt, doing business as the T. J. Drewitt Funeral Home. The funeral home had three employees, namely, Mr. Wylie H. Heard, and plaintiff, both of whom were embalmers and funeral directors. The other employee was a colored porter named A. J. Carter. The duties of plaintiff and Mr. Heard were substantially the same. However, the evidence discloses that plaintiff spent more time in the funeral home than Mr. Heard. But they were both on call twenty-four hours per day.
"Prior to and at the time of the accident the funeral home owned, and used four motor vehicles which consisted of two Cadillac hearses, a Pontiac ambulance, and a Chevrolet panel truck. The Cadillacs were `combination cars', and were used either as ambulances or hearses. However, the evidence discloses the Cadillacs were used primarily as hearses.
"The panel truck was apparently driven exclusively by the colored porter and was used for hauling cemetery equipment. The Cadillac hearses could be driven by either Mr. Heard or plaintiff. The Pontiac ambulance was driven by plaintiff, if there was no one else to drive it, when the occasion demanded. Apparently on such an occasion, March 14, 1959, at about 9:00 to 10:00 p. m., plaintiff received an emergency call to rush a patient to Shreveport for surgery. Mr. Heard was attending a party, and plaintiff took the patient in the Pontiac ambulance, and while enroute to a *788 Shreveport hospital, and driving the ambulance, the accident occurred.
"There were three vehicles garaged at the funeral home, and owned by plaintiff's employer. Plaintiff states he drove these vehicles occasionally and as the necessity therefor arose.
"The case of Moore v. State Farm Mutual Automobile Insurance Company [Miss.], 121 So.2d 125, decided by the Supreme Court of Mississippi appears to be factually quite similar to this case. The language in the State Farm Mutual policy issued to Moore is the same as the language of the policy issued by defendant in this case to plaintiff. In the Moore case the employer furnished for the regular use of its employees, ten motor trucks. Moore drove trucks two or three times a week for his employer and performed other duties which included the operation of a bulldozer and a tractor, and he did some carpenter work. He was not assigned to any particular truck. It was while plaintiff Moore was using one of the several trucks furnished for his use that he sustained the injuries for which he sued to recover medical payments under a policy insuring his individual automobile. The Court concluded that although the insured did not regularly use any particular one of the ten trucks, Moore's use of the truck was `regular use' precluding recovery of medical expenses incurred by him when injured while using such truck. The Mississippi Court in the course of its opinion said:
"`In Louisiana, the State where the contract was made, the Court considered a `regular use' exclusion in Leteff vs. Maryland Casualty Co., La.App., 91 So.2d 123, and that opinion clearly indicated Louisiana would reject the coverage in the present case.'"
"A careful examination of the jurisprudence I have been able to find bearing on the point at issue herein convinces me that the use by plaintiff of the Pontiac ambulance which he was driving when injured, was `regular use' precluding recovery of medical expenses incurred, as a result of the injuries sustained by him while using said vehicle.
"Therefore, the demands of the plaintiff are rejected at his costs."
The judgment appealed from is affirmed at appellant's costs.
Affirmed.