**<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>**
File Name: 16a0645n.06

Case No. 16-5265

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 02, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES GOSS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SUSAN TATE GREEN; JEFFREY GREEN, | ) | TENNESSEE |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. When James Goss got into an accident while driving his employer's truck, he thought he was covered by Allstate Insurance Company, his personal insurance carrier. He was not, as the exclusionary clause in the insurance contract made clear. Because Goss's employer furnished the truck for Goss's regular use and because his uninsured motorist coverage contained an exclusion for just this possibility, Goss did not have coverage for the accident under the terms of the policy. We therefore affirm the district court's grant of summary judgment to Allstate.

On March 3, 2008, Susan Tate Green crashed her car, and a tire from the vehicle flew off and hit the windshield of a truck driven by Goss. Goss and Allstate agree that, "[a]t the time of the accident, James Goss was operating an eighteen wheel vehicle owned by Bigbee Transportation." R. 42-2 at 1. Goss drove that truck "ninety (90) percent of the time in which he was performing his work for Bigbee Transportation." *Id.* at 1–2; R. 50-2 at 1. He "worked every day of the week and had made the particular route on which the accident occurred more than one hundred times." R. 42-2 at 2; R. 50-2 at 2.

After the accident, Goss sued Susan Tate Green and her husband for medical expenses, lost wages, and other injuries. Goss also sued Allstate, claiming that Allstate was his "underinsured insurance provider" and thus was "contractually obligated to pay any damages which exceed the Defendants' amount of insurance coverage." R. 3 at 3. Allstate moved for summary judgment because the insurance policy excluded coverage for "any damages . . . because of . . . bodily injury or property damage while in, on, getting into or out of, getting on or off, or when struck by a vehicle owned by or furnished or available for the regular use of, [the insured] or a resident which is not insured for this coverage." R. 42-5 at 36 (emphases omitted). Bigbee's truck was not one of the covered vehicles listed in the insurance policy, prompting the district court to grant summary judgment to Allstate. In the district court, the parties joined issue over the "which is not insured for this coverage" language of the exclusion. Allstate contended that it refers to coverage under the policy, and Goss argued that the language is not so limited. Goss has abandoned any such argument, having conceded that there was no coverage under his employer's policy.

Goss appealed—or at least tried to. We ruled that the grant of summary judgment was "a non-final and non-appealable order" because "the claim against the Greens remain[ed] pending."

2

*Goss v. Green*, No. 15-5533, at 2 (6th Cir. Sept. 29, 2015) (order). On January 11, 2016, after Goss settled with the Greens, the district court dismissed the case and entered final judgment. At that point, Goss appealed again—this time properly so.

The parties agree that Tennessee choice-of-law principles apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the law of the Volunteer State, "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (quotation omitted). For insurance policies, this means that we apply the law of the jurisdiction where the policy was "made and delivered." *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Allstate issued and delivered the policy to Goss in Mississippi. Even though the accident occurred in Tennessee, we therefore apply Mississippi law.

The appeal hinges on whether the exclusionary clause "can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). Under Mississippi law, "insurance policies which are clear and unambiguous are to be enforced according to their terms as written." *Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 519 (Miss. 1993). Otherwise, "[e]xclusions and limitations on coverage are . . . construed in favor of the insured. Language in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted. Nevertheless, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Martin*, 998 So. 2d at 963 (quotations omitted).

The problem for Goss is that this exclusionary clause is unambiguous. It excludes coverage for this accident because Bigbee's truck was "furnished . . . for the regular use of"

3

Goss.   R. 42-5 at 36.   The Mississippi Supreme Court has previously interpreted similar exclusionary clauses in the same way, *Miss. Farm Bureau Mut. Ins. Co. v. Jones*, 754 So. 2d 1203 (Miss. 2000); *Moore v. State Farm Mut. Auto. Ins. Co.*, 121 So. 2d 125 (Miss. 1960), precluding this clause from being fairly "interpreted in two or more ways," *Martin*, 998 So. 2d at 963.

*Moore* offers a good example.   The insured's personal insurance policy excluded coverage for injuries "while occupying an automobile owned by or *furnished for the regular use of* . . . the named insured."   121 So. 2d at 126 (emphasis added).   The insured was injured while driving one of the ten trucks he drove "for his employer two or three times a week."   *Id.*   The court interpreted the exclusionary clause to mean that coverage extended only "to casual or infrequent occupancy of other automobiles than the one named in the policy."   *Id.*   And "[t]wo or three trips a week," the Mississippi Supreme Court concluded, amounted to "regular use," not "casual" use.   *Id.* at 127.

Decades later, *Jones* used a similar approach, this time concluding that the exclusionary clause did not apply.   The insured was in an accident while driving a bus owned by the gospel choir ministry he belonged to, and the driver of the other vehicle was killed.   *Jones*, 754 So. 2d at 1203–04.   The insured sought to have his personal insurance carrier indemnify and defend him in the resulting wrongful death action.   *Id.* at 1204.   The relevant clause in the insured's policy excluded coverage for automobiles "furnished for the regular use to . . . the named insured."   *Id.* (emphasis omitted).   Looking at the totality of the circumstances, the Mississippi Supreme Court found three questions relevant in applying the exclusionary clause:   Was the insured "paid for his [driving] services"?   *Id.* at 1205.   How "frequently" did the insured drive the vehicle?   *Id.*   And did the insured just "happen[] to be one of the persons" driving the vehicle, or was "the

vehicle . . . in question . . . obtained for [his particular] use"? *Id.* The answers to all three questions favored coverage in *Jones*. The insured "was never paid for his services, and he drove much less frequently." *Id.* All told, he had driven the bus for the gospel choir ministry "only six or seven times." *Id.* at 1206 (Mills, J., dissenting). And the vehicle "in question was obtained for the use of the ministry. Jones just happened to be one of the persons with the ministry who drove." *Id.* at 1205 (majority).

Measured by *Jones* and *Moore*, Goss's insurance policy excluded coverage for his injuries in this accident. As in *Moore*, but unlike in *Jones*, Bigbee paid Goss to drive the truck. Goss frequently drove Bigbee's trucks during the years he had worked for the company. In fact, he drove the trucks "every day of the week," R. 50-2 at 2, and claims to have driven the route "[w]ay over a hundred times," R. 43-1 at 72. And Bigbee provided Goss with the truck, which he drove "ninety percent of the time," *id.* at 76, along with the preloaded trailer for "[his] weekly run," *id.* at 36. Indeed, Goss himself acknowledged during his deposition that he "had the regular use of a Bigbee truck and trailer." *Id.* at 76. All of this leads to the conclusion that the exclusion applies.

Goss tries to fend off this conclusion with several arguments, each unpersuasive. He first emphasizes that the exclusionary clause differs from the policies in *Moore* and *Jones* because his "policy adds the additional term 'available.'" Appellant's Br. 13. In context, here is what the policy says: "Allstate will not pay any damages . . . because of . . . bodily injury or property damage while in, on, getting into or out of, getting on or off, or when struck by a vehicle owned by or furnished *or available* for the regular use of, [the insured] or a resident which is not insured for this coverage." R. 42-5 at 36 (emphases omitted and added). As the italicized language makes clear, Goss overlooks the reality that the policy adds an "or" before "available." "[A]*nd*

5

combines items while *or* creates alternatives." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012); *see OfficeMax, Inc. v. United States*, 428 F.3d 583, 588–89 (6th Cir. 2005). In *Moore*, the insurance company did not have to prove that the truck was *both* owned by *and* furnished for the regular use of the insured. 121 So. 2d at 126–27. It is enough, in this case, that Bigbee furnished the truck for Goss's regular use because the policy excludes coverage for injuries while driving a vehicle "furnished *or* available for the regular use of" Goss. R. 42-5 at 36 (emphasis added).

Goss next points to the excess-compensation provision in the insurance policy. It clarifies that, "[i]f the insured person was in . . . a vehicle you do not own which is insured for this coverage under another policy, . . . this coverage will be in excess. This means that, when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after the other insurance has been exhausted." R. 42-5 at 37–38. By its terms, this provision applies only when Goss would already have coverage under the Allstate policy. And contrary to Goss's assertion, separately receiving workers' compensation for his injuries does not automatically entitle Goss to uninsured motorist coverage under his Allstate policy.

Goss, last of all, criticizes the refusal of the district court to consider parol evidence in its decision. For purposes of summary judgment, Allstate acknowledged that one of its agents told Goss and his wife when they purchased the insurance policy that the "uninsured motorist coverage would cover [Goss] when he was driving a truck as part of his occupation." R. 51-1 at 1. But Goss does not argue estoppel; rather, he offered this evidence to support his interpretation of the policy and to create an ambiguity. The court was correct to focus on the four corners of the insurance policy. "Parol evidence as to surrounding circumstances and intent," under

Mississippi law, "may be brought in where the contract is ambiguous, but where, as here, the contract was found to be unambiguous it has no place." *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987). Because the insurance policy remains unambiguous, Goss is "bound by the language of the instrument." *Id.*; *see also Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001).

For these reasons, we affirm.