Raymond CRUZ, Plaintiff–Appellant,

v.

FARMERS INSURANCE EXCHANGE, Defendant–Appellee.

No. 99CA0716.

Colorado Court of Appeals, Div. V.

March 16, 2000.

Rehearing Denied June 1, 2000.

Certiorari Denied Nov. 14, 2000.

Fogel Keating Wagner Polidori Shafner Struthers & Heron, P.C., David R. Struthers, Denver, Colorado, for Plaintiff–Appellant.

Levy & Lambdin, P.C., Karen H. Wheeler, Michael S. Power, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this automobile insurance coverage case involving an underinsured motorist provision, plaintiff, Raymond Cruz, appeals the summary judgment in favor of defendant, Farm-

ers Insurance Exchange (Farmers). We affirm.

The following facts are undisputed. While on duty as a policeman and driving a car that was assigned for his regular use by the police department, plaintiff was involved in an automobile accident. He sustained injuries in the accident and pursued, and eventually settled, a claim against the other motorist for the policy limits of that person's automobile insurance policy. Because he claimed his injuries and damages from the accident exceeded the amount received from that settlement, plaintiff then filed a claim for underinsured motorist benefits under his wife's insurance policy with Farmers.

Farmers denied coverage, relying upon the following exclusion in the policy that is typically referred to as the "regular use of another vehicle" exclusion:

This coverage does not apply to bodily injury sustained by a person:

. . . .

Arising out of the ownership, maintenance, or use of any vehicle other than your insured car ... which is owned by or furnished or available for regular use by you or a family member.

Seeking a declaration regarding coverage, plaintiff initiated this action for declaratory relief. Both parties filed motions for summary judgment. Concluding that the policy did not provide coverage for the accident and that the exclusion provision did not violate public policy, the trial court granted defendant's motion for summary judgment. This appeal followed.

## I.

Plaintiff contends the trial court misinterpreted the policy exclusion. We disagree.

■ The interpretation of a contract, including a contract for insurance, is a matter of law which we review *de novo*. *Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994). Accordingly, we are not bound by the trial court's interpretation. *Colard v. American Family Mutual Insurance Co.*, 709 P.2d 11 (Colo.App.1985).

■ Unless there is an ambiguity in the policy language, the policy must be enforced as written. *Jones v. USAA Casualty Insurance Co.*, 952 P.2d 819 (Colo.App.1997).

■ The plain language of the contract and the intent of the parties as expressed in that language serve as the starting point for the coverage analysis. We construe the terms of an insurance contract as they would be understood by a person of ordinary intelligence, *State Farm Mutual Automobile Insurance Co. v. Nissen*, 851 P.2d 165 (Colo. 1993), and we must avoid strained constructions of the language used. *Allstate Insurance Co. v. Starke*, 797 P.2d 14 (Colo.1990).

### A.

■ Plaintiff contends the exclusion is not applicable because neither he nor any family member owned the vehicle he was driving when he was injured. He further contends that, because the vehicle he was driving was furnished *by* the police department, it was not furnished for regular use *by* him or a family member, and for that same reason, the vehicle was not made available for regular use by him or a family member.

■ First, we note that a "regular use" or "drive other car" provision, such as that here, generally allows coverage for a driver for the occasional or infrequent use of an automobile, other than his or her own, without requiring payment of additional premiums. However, it excludes coverage for automobiles, regularly used by a driver, that are not listed under the policy or for which a premium is not paid. The provision serves to protect the insurer from a situation in which the insured pays only for coverage on one vehicle but regularly drives other uncovered automobiles that are owned by members of his family or are supplied by an employer, thereby broadening the insurer's risk. *See Urtado v. Shupe*, 33 Colo.App. 162, 517 P.2d 1357 (1973), *aff'd sub nom. Urtado v. Allstate Insurance Co.*, 187 Colo. 24, 528 P.2d 222 (1974); *Waggoner v. Wilson*, 31 Colo.App. 518, 507 P.2d 482 (1972). *See also Wyatt v. Cimarron Insurance Co.*, 235 F.2d 243 (10th Cir.1956); *North Pacific Insurance Co. v. Anderson*, 110 Or.App. 269, 821 P.2d 444 (1991).

Here, the policy term contains two independent clauses, excluding coverage for two categories of vehicles: those "owned by" the specified category of persons, and those "furnished or available for regular use by" the category of persons. Although the phrase as written does not contain commas setting off those clauses, the last five words "you or a family member" apply to both clauses. Thus, we read the phrase to mean "vehicles owned by you or a family member, or vehicles furnished or available for regular use by you or a family member."

As a result, we agree with plaintiff that neither he nor a family member owned the vehicle he was driving at the time of the accident. Accordingly, that portion of the exclusion is inapplicable.

However, as to plaintiff's contention that the vehicle was not furnished *by* him or made available for regular use *by* him or any family member, the essential question is whether the word "by" in the second part of the phrase should be read to refer to the words "furnished" and "available." If so, plaintiff did not furnish or make the vehicle available; rather, the police department did.

We conclude that plaintiff misinterprets the policy language. Plaintiff reads the exclusion to provide that he or a family member must furnish or make a vehicle available for use by a third person for this exclusion to operate. Contrary to plaintiff's argument, because the second "by" in the phrase appears immediately after "regular use," and not immediately after "furnished" or "available," we interpret it to refer to "regular use." Consequently, it is the "use by" the persons named to which the exclusion refers. Hence, the exclusion applies when a person is injured in an accident involving a vehicle, other than the car insured under the policy, that is "furnished or available for (1) the insured's regular use or (2) regular use by the insured's family."

Our interpretation is in accord with the effect given to similar phrases in other cases. The particular phrase at issue in this case, "regular use by you or a family member," has not been interpreted in Colorado. However, in *State Farm Mutual Automobile Insurance Co. v. Nissen*, supra, the supreme

court stated that the reasonable meaning of the phrase "furnished for the regular use of you" is that a third party, whether employer, friend, or relative, has provided a car for the insured's use. Further, the phrase here differs from the exclusion addressed in *Nissen* by only one word: this policy uses the word "by" in place of "of." Under our construction, these two words have essentially the same meaning in the particular policy provision. Hence, the meaning here is the same as in *Nissen*.

We also note that courts in other jurisdictions have interpreted similar, although not identical, "regular use" exclusions under facts very similar to those in this case. Those courts have held that when an employer, in particular a police department, has provided the vehicle to the insured for use on the job, the exclusion operates to preclude coverage. See *Galvin v. Amica Mutual Insurance Co.*, 11 Mass.App.Ct. 457, 417 N.E.2d 34 (1981); *Kenney v. Employers' Liability Assurance Corp.*, 5 Ohio St.2d 131, 214 N.E.2d 219 (1966).

In *Farmers Insurance Co. v. Zumstein*, 138 Ariz. 469, 675 P.2d 729 (Ariz.App.1983), the Arizona court of appeals interpreted the same policy language as present here. There, the court held that the phrase "furnished or available for regular use by you or a family member" excluded coverage for the person who was injured in an accident while operating a vehicle that was provided by his employer and regularly available for his use. Although the main issue in that case was whether the plaintiff's use of the vehicle in fact constituted "regular use," the court noted that the policy language "taken in its plain, ordinary sense is easily understood by the insured to mean that no coverage exists on cars that he or his family may have the right to use regularly." *Farmers Insurance Co. v. Zumstein*, supra, 675 P.2d at 734; *see also American Family Insurance Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998) (interpreting the phrase "furnished or available for regular use *by* you or any resident of your household" to exclude coverage for the insured who was operating his employer's vehicle at the time of the accident).

Our interpretation further comports with the generally recognized purpose of such exclusions. As noted previously, such exclusions provide coverage for the occasional use of a vehicle not insured under the policy without incurring an additional premium, but exclude coverage for a vehicle that the insured or a family member uses on a regular basis without a corresponding premium charge.

Accordingly, because it is undisputed that plaintiff's accident occurred while he was using a vehicle (other than his wife's insured car) that was furnished or available to him for his regular use, the trial court did not err in granting summary judgment in favor of defendant.

### B.

Plaintiff nevertheless asserts that his reading of the exclusion is reasonable. Thus, he contends, the exclusion is ambiguous and should be construed against Farmers, the drafter of the policy. We reject this contention.

■ An insurer must draft exclusionary clauses in clear and specific language. To benefit from an exclusionary clause, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation. *Prudential Property & Casualty Insurance Co. v. LaRose,* 919 P.2d 915 (Colo.App.1996).

■■ A policy provision is ambiguous if it is susceptible of more than one reasonable interpretation. In determining whether there is an ambiguity in a policy provision, a court must evaluate the policy as a whole using the generally accepted meaning of the words employed. *Union Insurance Co. v. Houtz, supra.*

■ If an ambiguity in the policy language exists, the language must be construed against the drafter of the document and in favor of the insured. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992). However, a mere disagreement between the parties regarding the interpretation of the policy does not create an ambiguity. *Union Insurance Co. v. Houtz, supra.*

In our view, there is no ambiguity because plaintiff's proposed interpretation is not reasonable. Under his interpretation of the policy language, the exclusion operates when he, his wife, or another family member furnishes or makes available to third persons a vehicle neither he nor a family member owns. However, that interpretation essentially means that plaintiff would be furnishing a vehicle that was never covered under the policy. It would make no sense to exclude coverage for a vehicle for which there was never any insurance in the first place.

In addition, similar "regular use" or "drive other car" exclusions have been found to be unambiguous in other cases. See *Hayes v. Fireman's Fund Insurance Co.,* 170 Colo. 164, 460 P.2d 225 (1969); *Iowa Mutual Insurance Co. v. Addy,* 132 Colo. 202, 286 P.2d 622 (1955).

### C.

■ Plaintiff next contends that the word "person" as used in the introductory phrase, "This coverage does not apply to bodily injury sustained by a *person* ..." (emphasis added), means someone other than the insured or the insured's family members. Therefore, he asserts, the exclusion does not apply to him. In the alternative, he argues that use of the word "person" creates an ambiguity in the contract because the policy uses more specific terms in other parts of the policy. We disagree with both contentions.

■ When a term is not specifically defined in a policy, the word retains its plain, ordinary, customary, and generally accepted meaning. *Gulf Insurance Co. v. State,* 43 Colo.App. 360, 607 P.2d 1016 (1979).

Here, the fact that the insurance policy refers to people by a variety of terms, such as "you," "your," or "insured person" does not make the exclusion ambiguous because it refers to an individual suffering personal injuries as a "person." The term "person" cannot be read in isolation to create an ambiguity in the policy as a whole where none exists.

A "person" is an individual human being. *See* Random House Webster's Unabridged Dictionary 1445 (2d ed.1998). And, plaintiff

is a "person" within the commonly accepted definition of that word. The fact that the policy at times uses more precise definitions does not preclude the use of a very broad term to encompass all of those terms.

Accordingly, we conclude that the term "person" used in the opening sentence of this exclusion, means any human being, whether a third party, the insured, or the insured's family members. Thus, the use of the word "person" does not create an ambiguity.

## II.

Plaintiff next contends that, assuming the "regular use" exclusion applies to him, it nevertheless violates the public policy behind Colorado's uninsured motorist statute, § 10–4–609, C.R.S.1999.

An insurance policy may be void as against public policy if it dilutes, conditions, or limits statutorily mandated coverage. *Terranova v. State Farm Mutual Automobile Insurance Co.,* 800 P.2d 58 (Colo. 1990). However, a policy exclusion is not void simply because it narrows the circumstances under which coverage applies. *Farmers Insurance Exchange v. Chacon,* 939 P.2d 517 (Colo.App.1997).

The question is whether the policy language which limits underinsured motorist coverage to vehicles covered under the policy and other vehicles used occasionally is consistent with the language, intent, and public policy considerations of § 10–4–609, C.R.S. 1999. We conclude that it is.

Section 10–4–609 states, in pertinent part: No automobile liability or motor vehicle liability policy ... shall be delivered or issued ... unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in, section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

The intent of the statute is to compensate innocent insureds for losses caused by financially irresponsible drivers. However, underinsured motorist coverage is not mandatory, and individual insureds are free to decline such coverage. *See State Farm Mutual Automobile Ins. Co. v. Nissen,* supra. Further, the statute does not require full indemnification of losses suffered at the hands of underinsured motorists under all circumstances. Rather, it intends to put a person injured by an underinsured motorist in the same position as one injured by a tortfeasor insured in compliance with the law. *See Terranova v. State Farm Mutual Insurance Co.,* supra.

Thus, under § 10–4–609(1), insurers are required to offer uninsured/underinsured motorist coverage to a class of individuals coextensive with the class covered by the liability provision of the respective policy. See *Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995).

Here, plaintiff's policy contains the same "regular use" exclusion in both the liability and uninsured/underinsured sections of the policy. Thus, the same classes of people are provided coverage under both provisions to the same extent.

Plaintiff relies upon cases from other jurisdictions holding that similar exclusions violate public policy. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Duran,* 163 Ariz. 1, 785 P.2d 570 (1989). However, those cases are inapposite. They deal with statutes and public policies that differ from those in Colorado.

We therefore conclude that the "regular use" exclusion in the uninsured motorist coverage of plaintiff's policy does not offend public policy. See *Williams–Diehl v. State Farm Fire & Casualty Co.,* 793 P.2d 587 (Colo.App.1989); *see also Urtado v. Shupe,* supra ("drive other car" exclusions in the liability coverage portion of insurance policies do not violate public policy).

The judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.